GARRET LAIR et al., *vs.* SAMUEL KILLMER.

1. The act entitled, " An act to prevent obstructions to the navigation of the river Delaware," passed March 1st, 1820, does not prohibit the erection of all dams; but its prohibition is limited to a dam, wing, or other device creating, drawing off, or using a water power, or for taking fish.

2. An information for an offence against the statute must specify the purpose for which the wing, dam, or device was erected. · ··

3. A penal law cannot be extended by construction. The act constituting the offence must be within both the letter and the spirit of the statute.

*Certiorari* to Hunterdon Quarter Sessions.

Samuel Killmer, who sued as well for the use of the poor of the county of Hunterdon as for himself, filed an information against Garret Lair. and seven others, for violating the act entitled, " An act to prevent obstructions. to the navigation of the river Delaware," passed March 1st, 1820, (*Nix. Dig.* 533.)

The case was tried in the Hunterdon Quarter Sessions, at the April term, 1855, and judgment given against all the defendants except one.

The defendants brought a *certiorari* removing the case into this court.

. The first and principal ground relied on for reversal was, that the information was defective.

The substance of the allegation appears in the opinion of the court.

Argued February term, 1856, before the CHIEF JUSTICE, and Justices OGDEN, ELMER, and HAINES, by *Randolph*, for the plaintiffs in the *certiorari*, and *Wurts*, for defendants.

The CHIEF JUSTICE delivered the opinion of the court.

The first ground relied upon for reversal is, that the information upon which the conviction was had is defective. The information is for a violation of· the act entitled, " An· act to prevent obstructions to the navigation of the river Delaware," passed March 1st, 1820, (*Nix. Dig.* 533). By

the statute it is enacted, that " no bridge, floating stage, or other device in the nature of a bridge, no dam, wing, or other device, creating, drawing off, or using a water power, or taking fish, shall hereafter be erected, placed, or dug in any part of the river Delaware, between New Jersey and Pennsylvania, without a view first had by three skillful and respectable freeholders in each state," &c., &c.; "and any person or persons offending against the provisions of this act shall, on conviction thereof before the Court of Quarter Sessions of the next adjoining county, forfeit and pay, for each offence, such sum, not less than five hundred, nor more than a thousand dollars, as such court shall adjudge, one half to the informer or informers, and the other half to the use of the poor of the proper county."

The information, in the first and second counts, charges the defendants with erecting and maintaining a " wing-dam," of specified dimensions, to the obstruction of navigation, in violation of the statute. In the third count, the charge is erecting and maintaining a wingdam and device, of specified dimensions, in violation of this statute. Neither of the counts specifies for what purpose the wingdam or device was erected. If the statute prohibits the erection of any dam, wing, or device whatever in the river, the objection is not well taken; but if the offence created by the statute is limited to the erection of a dam, wing or other device for specific purposes, the information is defective, because it does not charge the offence created by the statute.

Upon the argument, it was insisted that the statute prohibits the erection of any dam, wing, or device whatever in the river, and consequently that the offence was committed, no matter for what purpose the dam was erected, and whether it did or did not obstruct the navigation of the river. The pleader who drafted the information has manifestly taken a different view of the mean-

ing of the law. Looking to the title of the act, he has deemed the essence of the offence to consist in the obstructing the navigation of the river, and has charged, in each count of the information, that the dam was an obstruction to navigation, and a common nuisance. The offence is thus brought clearly within the spirit of the act. Is it within the letter?

The language of the act is, "no bridge, floating stage, or other device in the nature of a bridge, no dam, wing, or other device creating, drawing off, or using a water power, or taking fish, shall hereafter be erected. The phraseology, though certainly inaccurate, is sufficiently clear and intelligible. The language is not, "no dam, wing, or other device in the nature of a dam," as in the first clause of the prohibition; but it is "no dam, wing, or other device creating, drawing off, or using a water power, or taking fish;" or, simplifying the language, and adopting the obvious meaning of the sentence, it would read, "no dam, wing, or other device creating a water power, or for taking fish," thus limiting the offence to the erection of a dam, wing, or other device for one or the other of those purposes. If the statute declared that no dam, weir, basket, or other device for taking fish, should be erected in the river, there would be no hesitation in confining the entire prohibition solely to devices for taking fish. The qualification extends not alone to other devices, but to all the devices specified in the sentence. The prohibition of the statute is therefore, by its terms, limited to dams, wings, and devices, creating, drawing off, or using a water power, or for taking fish. No other dam is within the prohibition of the statute  To constitute the offence, therefore, it must be averred in the information that the dam was erected for one or the other of the purposes specified in the act. If it be asked why the legislature should have restricted the prohibition to dams erected for any particular purposes, the obvious answer would

seem to be, that these alone had occasioned obstructions to navigation, and that dams for any other purpose had not been erected, and probably would not be erected, of sufficient extent to prove injurious to the navigation of the river

The crime charged is the creature of the statute. It is neither *malum in se*, nor an offence at common law except as a mere obstruction to navigation, and in that aspect it is punishable by indictment. In defining the crime and the punishment, penal statutes are to be taken strictly and literally. A penal law cannot be extended by construction. The act constituting the offence must be both within the spirit and the letter of the statute. *State* v. *Stimson*, 4 *Zab.* 30; 1 *Bla. Com.* 88; *Bacon's Abr. "Statute" I,* 9; *Dwarris on Stat.* 736, 737.

The complaint, in each of the counts, is defective in substance, and on this ground the judgment below must be reversed.